Lamont v. Regan.

Reversed and remanded.

James Lamont and Esther A. Lamont v. Frank S. Regan, Trustee of the Estate of James Lamont, Bankrupt.

1.   Fraudulent Conveyances—*May Become So After Execution.*— A deed not fraudulent at first may become so afterward by being concealed, or not pursued, by means of which creditors have been induced to give credit.

2.   Same—*Burden of Proof on Subsequent Creditors.*—As to subsequent creditors and trustees who represent them, the burden of proving an intention to commit a fraud in the making of a conveyance or withholding it from record rests upon such creditors.

3.   Freehold—*When Not Involved.*—Although in consequence of a proceeding in bankruptcy the title of a bankrupt in his property is transferred to his trustee, such transfer is only for the purpose of enabling the trustee to satisfy the claims proven against the bankrupt out of such property, and if such claims are paid from any source without a sale or further conveyance the title will be undisturbed by a suit by the trustee to set aside a fraudulent conveyance by the bankrupt and a freehold is not involved in such a suit.

Bill to Set Aside a Fraudulent Conveyance.—Appeal from the Circuit Court of Winnebago County; the Hon. John C. Garver, Judge, presiding.    Heard in this court at the April term, 1901.    Reversed and remanded with directions.    Opinion filed July 12, 1901.

B. A. Knight, attorney for appellants.

ANDREWS & VAN TASSEL, FRED H. SMITH and HERBERT S. HICKS, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Frank S. Regan, as trustee of the bankrupt estate of James Lamont, filed in the court below, against James Lamont and Esther A. Lamont, a bill to set aside a certain conveyance made March 22, 1886, by James Lamont to his wife, Esther Lamont, of their homestead, then occupied by them in Rockford, Illinois. At the date of such conveyance the premises were free and clear of all incumbrance. The deed was for an expressed consideration of $5,000, but was in fact voluntary, and transferred to Esther Lamont the entire title of James Lamont therein, with the exception of the homestead interest which he then had in the premises. James and Esther Lamont continued to occupy the said premises up to the time of the filing of the bill in this case. For more than ten years and up to July 12, 1897, the deed of said premises remained in the possession of the grantee, Esther A. Lamont, no one, other than the grantor and grantee therein, knowing of its existence. During this period the taxes thereon were paid by Esther Lamont through the agency of her husband, in whose name the payments were made. At the time of the execution of said deed James Lamont was entirely solvent and in good circumstances; no debts existing then were unpaid at the time of the recording of said deed by Mrs. Lamont on July 12, 1897. Some years prior to July 12, 1897, Mr. Lamont became connected with the Monitor Publishing Company, an Illinois corporation, and thereafter a joint maker and indorser of a large amount of its negotiable paper, so that at the time the deed was filed for record he owed about $10,000, and was then, on account of such indebtedness, insolvent, and thereafter, on the 26th of October, 1899, something more than two years after the recording of said deed, he became a bankrupt. Among the claims allowed against his bankrupt estate was that of George Falconer, as guardian of certain children of Isabella McFayden. It

Lamont v. Regan.

appears that on January 29, 1894, Isabella McFayden, now deceased, loaned to the Monitor Publishing Company, upon its note, the sum of $250. On the same day she also loaned to James Lamont upon his note the same sum. These loans were made without representation as to the financial standing or property of Mr. Lamont, or the Monitor Publishing Company, and without any examination as to what real property stood in the name of Mr. Lamont. Upon the maturity of said notes, January 29, 1897, they were extended and a mortgage was given on certain realty to secure each of said notes, James Lamont becoming responsible for the entire indebtedness. Said mortgages have been foreclosed, leaving a deficiency. The aggregate amount of the two deficiencies, together with interest thereon, was at the time the bankruptcy proceedings against Mr. Lamont were instituted, about $270.

It is admitted by appellee that the conveyance made by James Lamont to his wife March 26, 1886, was not made with the intention of defrauding George Falconer out of the claim that accrued to him eight years thereafter, and that if said deed is fraudulent it has become so by reason of its not having been recorded until July 12, 1897.

The court below found that the deed was fraudulent and set it aside as against appellee, as trustee of all the creditors of James Lamont, although George Falconer is the only creditor whose claim was in existence at the time the deed was recorded. The question thus presented is, were any of the creditors of James Lamont now represented by the trustee in bankruptcy induced to give credit to James Lamont by any representation made by him as to his ownership of said property, or by the fact that the title thereto at the inception of such indebtedness stood in his name. The fact of the title to such property standing of record in the name of James Lamont can not have induced any one to give him credit, unless the property was of a value greater than the homestead right which he and his wife then had therein, and the inchoate right of dower thereto resting in Mrs. Lamont. The court below found that the

value of the property so conveyed was $5,000, but there was no evidence to base such finding upon other than the mere fact that in the deed the consideration mentioned was $5,000, but which consideration was not in any part actual.

Counsel for appellee argue that proof of value of such premises is not in this case an essential and necessary matter of evidence except as a matter of defense, because the deed from James Lamont to his wife did not convey his homestead. Proof of the value of said premises was essential in this case, because if the value of the premises did not exceed the rights therein superior to the rights of creditors by judgment or otherwise, then, certainly, the conveyance was not fraudulent. It can only be held fraudulent upon theory and proofs that thereby was put out of James Lamont and vested in his wife a valuable asset belonging to him, to and out of which, but for such conveyance, his creditors could have had recourse and obtained satisfaction. Nor does it fairly appear from the evidence adduced in this cause that any of the present creditors of James Lamont trusted him upon the faith of any representations he made as to his means, or as to his ownership of said property, or because of the fact that the title thereto stood of record in his name. The preponderance of the evidence is to the contrary, while the burden of proof in this regard was upon appellee.

It must be borne in mind that none of the creditors represented by appellee were such at the time of the execution of this deed, nor did any become such until many years thereafter; all are subsequent creditors, and the question is as to their rights as such subsequent creditors.

The claim of appellee does not fall within the rule laid down in Martin v. Dryden, 1 Gilm. 188, and Crawford v. Logan, 97 Ill. 400.

It is undoubtedly the case that a deed not fraudulent at first may become so afterward by being concealed, or not pursued, by means of which creditors have been induced to give credit. It does not fairly appear in this case that any of the creditors represented by appellee gave credit to

James Lamont, upon the faith of his supposed ownership of the property in question.   As to these subsequent creditors and the trustee who represents them, the burden of proving an intention to commit a fraud in the making of such conveyance, or the withholding of the same from record, rests upon appellee.   Wait on Fraud, 2d Ed., 96; Bump on Fraud, Sec. 498; Todd v. Nelson, 109 N. Y. 327.

Although as a consequence of the bankruptcy proceeding the alleged title of James Lamont in this property was transferred to Frank S. Regan, his trustee, yet such transference was only for the purpose of enabling the trustee out of such property to satisfy the claims proven against the bankrupt; and if such claims are paid by anybody or from any source without sale or further conveyance the title would be undisturbed by this suit.   A freehold is therefore not necessarily involved in this suit.   Chicago, B. & Q. R. R. Co. v. Watson, 105 Ill. 217.

The decree of the Circuit Court is reversed and the cause remanded with instructions to dismiss the bill for want of equity.   Reversed and remanded with directions.